IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICOLE B.[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Civ. No. 3:22-cv-00365-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Nicole B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Full consent to magistrate jurisdiction was entered on January 2, 2022 (Dkt. #5). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for immediate calculation and payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

## BACKGROUND

Plaintiff is a fifty-year-old who alleges she is unable to work due to physical impairments. Tr. 159.[2] Plaintiff filed an application for SSI and DIB on September 26, 2019. Tr. 285-91, 306-14. In her application, Plaintiff claimed disability with an alleged onset date of August 15, 2019. Tr. 285, 306. The claim was denied initially on February 10, 2020, and upon reconsideration on July 31, 2020. Tr. 159-84. A hearing was held on March 2, 2021, before Administrative Law Judge ("ALJ") John Michaelsen. Tr. 130-58. On March 23, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from the alleged onset date through the date of decision. Tr. 114. On January 12, 2022, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1-4. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

---

[2] Citations to "Tr." Are to the Administrative Record. (ECF 11).

2 - Opinion and Order

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

3 - Opinion and Order

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since August 15, 2019, the alleged onset date. Tr. 107.

2. Plaintiff has the following severe impairments: degenerative disc disease; obesity; and a history of lumbar meningioma requiring repeat surgical intervention (20 CFR 404.1520(c)). Tr. 108.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). Tr. 109.

4. Plaintiff has the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to no more than frequent balancing,

and no more than occasional kneeling, crouching, crawling, stooping, or climbing of ramps and stairs. She would need to avoid climbing ropes, ladders, or scaffolds, and would be limited to simple, repetitive, routine tasks." Tr. 110.

5. Plaintiff is unable to perform any past relevant work. Tr. 112.

6. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy, such as a production assembler, collator operator, and office helper. Tr. 113-14.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, since August 15, 2019, the alleged onset date. Tr. 114.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence ... is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

5 - Opinion and Order

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony for clear and convincing reasons, and

2. Whether the ALJ properly discounted the lay witness testimony of Plaintiff's mother.[3]

For the following reasons, the Court finds that the ALJ erred. The decision of the Commissioner is reversed and remanded for immediate payment of benefits.

### I.    The ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective

---

[3] Plaintiff also argues that additional evidence presented to the Appeal's Council showed reasonable probability of affecting the ALJ's decision. Tr. 11-12. The Appeals Council rejected part of the evidence because it did "not show a reasonable probability that it would change the outcome of the decision" and rejected the other part because it did "not relate to the period at issue." Here, the Court "need not decide whether it constitutes new evidence sufficient to remand the case pursuant to 42 U.S.C. § 405(g), because the court is remanding the case on other grounds." *Lockwood v. Carolyn W. Colvin*, No. 12-CV-00403-NJV, 2013 WL 1964923, at *11 (N.D. Cal. May 10, 2013).

6 - Opinion and Order

medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

### A. Medical evidence and treatment did not contradict plaintiff's subjective symptom testimony.

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

7 - Opinion and Order

When evaluating a plaintiff's symptom testimony, an ALJ can consider the plaintiff's response to treatment, 20 C.F.R. § 404.1529(c)(3)(iv)–(v), and improvement with treatment can be sufficient to discount their testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's back pain improved over the course of treatment); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). Likewise, an ALJ may consider whether plaintiff's symptom testimony is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, available at 2017 WL 5180304, at *7-8. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

The ALJ did not reasonably consider plaintiff's response to treatment or the medical record when deciding to discount her testimony. The ALJ considered MRIs of plaintiff's spine from 2017 to 2020, noting stable images and no indication that her lumbosacral meningioma disease had worsened. Tr. 110-11. The ALJ also noted plaintiff's use of prescription medications, such as Tegretol, hydrocodone, gabapentin, and Vicodin, as well as Tylenol and heating pads, to manage her pain. Tr. 111.

However, this evidence does not contradict plaintiff's pain testimony. Plaintiff testified to experiencing back and leg pain and numbness and regularly made these complaints throughout the medical record. Tr. 137-49, 162, 163, 172, 342, 435, 445, 481, 515, 520, 522, 524, 556, 560, 566, 638, 643, 655, 657, 667, 698, 703, 715, 718, 744, 901, 927, 932, 1261. Though imaging noted that plaintiff's disease was stable, plaintiff's disease was still present on MRI and was regularly noted to be "concerning for recurrent disease" due to some interval change. Tr. 420, 421, 423, 483, 535, 572, 586, 593, 656, 662, 685, 686, 716, 722, 768, 769. Throughout this time,

plaintiff continued to complain of "debilitating" pain flares that lasted multiple days and received prescriptions for treatment that were not consistently helpful. Tr. 467, 642, 739, 807, 859, 1043. Thus, though plaintiff's disease was considered stable, imaging, medical records, and plaintiff's use of medication were not clear and convincing reasons for the ALJ to discredit plaintiff's symptom testimony.

### B. The ALJ failed to consider all of plaintiff's symptoms.

The ALJ must consider the entire record, including all alleged symptoms and non-severe impairments, when formulating a decision. SSR 16-3p, 96-8p; 20 CFR § 404.1520(e), 404.1545, 404.1529. In particular, plaintiff reported chronic urinary hesitancy throughout the record. At the hearing, plaintiff testified to requiring 2 to 3 attempts to void her bladder and taking 15 to 20 minutes to finish. Tr. 149. At medical appointments, plaintiff reported taking 15 minutes or more to void her bladder. Tr. 997, 1252, 1259. In September 2020, urologist Kamran Sajadi, M.D., performed a cystometrogram and pressure flow study, diagnosing plaintiff with voiding dysfunction and an underactive bladder with likely neurogenic etiology that had few options beyond catharizing to help. Tr. 997-99.

The ALJ failed to mention or consider plaintiff's symptoms of urinary hesitancy from her numerous tumor resection surgeries. Tr. 110-12. The plaintiff had objective testing and a diagnosis of urinary hesitancy and testified to requiring 15 minutes or more to void her bladder. Tr. 149, 997-99. The ALJ was required to consider plaintiff's urinary hesitancy and how it potentially limited her capacity for work. 20 C.F.R. § 404.1529. The ALJ erred by not considering all of plaintiff's symptoms.

### C. Plaintiff's activities did not contradict her testimony.

9 - Opinion and Order

An ALJ may consider a claimant's daily activities when evaluating the claimant's statements about the severity of her symptoms. 20 C.F.R. § 4040.1529(c)(3)(i). "Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). The Ninth Circuit has upheld ALJs' findings that routine daily activities—e.g., playing video games, using public transportation, shopping in stores (*Ahearn*, 988 F.3d at 1117), walking children to school, going to church (*Molina*, 674 F.3d at 1113), cooking, housekeeping, and doing laundry (*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001))—can contradict a claimant's symptom testimony. An ALJ "may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). "However, holding oneself out for part-time work is not inconsistent with the receipt of disability benefits, which only require the inability to work full time." *Leak K. v. Comm'r. of Soc. Sec.*, 626 F. Supp. 3d 1099, 1109 (D. Or. 2022) (citing *Carmickle v. Comm'r. of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008)).

Here, the ALJ noted that plaintiff worked part-time, on average, 12 hours per week, during the relevant time period to help her former employer close his clinic. Tr. 111. The ALJ also noted that plaintiff "is able to drive" and "was getting up in the morning and gardening[.]" Tr. 111. The ALJ further noted that plaintiff visited her grandmother in Arizona to act "as her grandmother's eyes, reminding her to take her medication, and opening cans and jars for her." Tr. 111. The ALJ reasoned that because plaintiff "is able to perform a number of activities on her and supporting her grandmother, the undersigned finds the claimant's alleged loss of function is inconsistent with the medical evidence of record." Tr. 111-12.

However, the ALJ did not explain how this minimal activity contradicted Plaintiff's testimony. Plaintiff testified that she worked 12 hours per week because her employer allowed her to

10 - Opinion and Order

work "whatever hours that [she] need[ed]" and take naps at work. Tr. 136, 139. Plaintiff wrote in her function report that she "putter[s] in [her] garden" made of "built up" or raised "handicap" garden beds her brother built for her. Tr. 163, 371, 372, 936, 987, 1291, 1292. Plaintiff testified that to help her grandmother in Arizona, plaintiff would read mail for her, give her dogs medicine, occasionally cook, and would clean dishes or use a Swiffer mop until she had to sit to rest her back. Tr. 145-46. She also testified that she drove once a week for groceries. Tr. 146. With all activities, plaintiff testified that she required frequent sitting breaks and heating pads due to pain. Tr. 138, 146, 148, 368-75. Thus, none of the activities the ALJ mentioned were inconsistent with plaintiff's testimony.

"'One does not need to be 'utterly incapacitated' in order to be disabled,' and the Ninth Circuit has repeatedly cautioned courts 'that the mere fact that a plaintiff has varied on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.'" *Leah K.* at 1109 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Commissioner "notes that daily activities can undermine a claimant's allegations when, as here, they 'contradict [the claimant's] other testimony,' even if they are not comparable to full-time work." Def. Br. 5 (quoting *Orn*, 495 F.3d at 639). However, Plaintiff testified to all of the activities noted by the ALJ, thus plaintiff's activities did not contradict her testimony.

In sum, the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective system testimony, and the Court concludes that this was harmful error.

**II.    The ALJ erred by not considering the lay witness testimony of plaintiff's mother.**

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical

11 - Opinion and Order

sources and nonmedical sources about how your symptoms affect you."). For claims after 2017, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" the same as for medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). However, the ALJ must give reasons "germane to the witness" when discounting lay witness testimony. *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Molina*, F.3d at 1117, 1122.

The ALJ failed to mention plaintiff's mother's testimony in his decision. Tr. 102-14. In her Third-Party Function report, Plaintiff's mother wrote that plaintiff cannot take care of herself, "may be able to go to work after sitting upright for an hour[,]" has difficulty showering, "does not do her own laundry, change bed or cleaning[,]" and that plaintiff is slow to help with cooking and requires several breaks. Tr. 360-62. Plaintiff's mother also wrote that plaintiff can walk "less than a block" and requires "about 20-30 minutes" of rest before resuming her walk. Tr. 365. Plaintiff's mother wrote that she had to leave California for Oregon to help plaintiff at the request of plaintiff's brother, who lives with plaintiff. Tr. 367.

The ALJ erred by failing to consider this lay witness testimony and provide reasons germane to the witness to discount said testimony. The Commissioner argues that this error was harmless because the testimony was the same as plaintiff's, and "the ALJ's well-supported reasons for rejecting [p]laintiff's testimony apply equally well to it." Def. Br, 8, However, as discussed above, the ALJ erred in his rejection of plaintiff's testimony. The Court concludes that the ALJ erred here as well.

12 - Opinion and Order

### III. Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first prong is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting plaintiff's subjective symptom testimony and for discrediting the lay witness testimony of plaintiff's mother.

13 - Opinion and Order

As to the second prong, the record has been fully developed, and the Court concludes that further proceedings would serve no useful purpose.

As to third prong, if the discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. Plaintiff testified to continued back and leg pain requiring frequent breaks and naps during work. Tr. 136-49, 162, 163, 172, 342, 435, 445, 481, 515, 520, 522, 524, 556, 560, 566, 638, 643, 655, 657, 667, 698, 703, 715, 718, 744, 901, 927, 932, 1261. Plaintiff's medical record shows continued intervals of change "concerning for recurrent disease" regarding her spinal meningioma. Tr. 420, 421, 423, 483, 535, 572, 586, 593, 656, 662, 685, 686, 716, 722, 768, 769. Plaintiff complained of "debilitating" pain flares that lasted multiple days, but prescriptions for pain intervention were not consistently helpful. Tr. 467, 642, 739, 807, 859, 1043. Plaintiff testified that it takes 15 to 20 minutes to void her bladder. Tr. 149. A complex cystometrogram with pressure-flow study revealed plaintiff had an "underactive bladder, likely neurogenic in etiology" and her "pelvic exam was notable for decreased sensation and weak pelvic floor contractility." Tr. 997-98. After that exam and testing, surgical urologist Kamran Sajadi, M.D., diagnosed plaintiff with voiding dysfunction, noting that "it takes [plaintiff] 10+ minutes to urinate." Tr. 998-99. Other than catheterizing, Dr. Sajadi noted that "[w]e don't have a lot of great options in these situations" and she would need to monitor plaintiff's voiding abilities moving forward. TR. 998.

At the hearing, the Vocational Expert testified that if an employee exceeded the normal time of ten-minute breaks twice per workday, that employee would be dismissed. Tr. 153-54 Plaintiff also testified that she had to nap multiple times at work during a twelve-hour work week. The Vocational Expert testified that an individual who is routinely off task more than 5% of the time (with a "firm cut-off number" of 10%) or misses work more than one day per month,

14 - Opinion and Order

that individual would not be able to maintain full-time work. Tr. 155. Thus, in fully crediting the evidence as true, the ALJ would be required to find plaintiff disabled on remand. Remand for additional proceedings would serve no purpose and "would needlessly delay effectuating the primary purpose of the Social Security Act," which is "to give financial assistance to disabled persons. . . ." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Accordingly, the Court reverses the Commissioner's decision and remands this case for an immediate calculation and payment of benefits.

## ORDER

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 21 day of September, 2023.

                                                                                  _____
                                                                                  MARK D. CLARKE
                                                                                  United States Magistrate Judge